Filed 8/24/22  P. v. Rizo CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GILBERT PAUL RIZO, JR.,<br><br>Defendant and Appellant. | C091020<br><br>(Super. Ct. No. STK-CR-FECOD-2017-0016606) |

A jury found defendant Gilbert Paul Rizo, Jr., guilty of numerous crimes, including carjacking, kidnapping to commit rape, and rape by force or fear, and the trial court sentenced him to an aggregate determinate term of 10 years eight months, an indeterminate term of seven years to life, and five consecutive indeterminate terms of 25 years to life.

Defendant asserted in his appellant's opening brief that the trial court abused its discretion in admitting evidence that defendant committed a second uncharged carjacking the same day, and that the victim was thinking about her missing friend during the crimes.  Defendant subsequently filed a supplemental brief urging that remand and resentencing is required under newly enacted Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731).

We will affirm defendant's convictions but vacate his sentence and remand the matter to permit the trial court to reconsider the sentence based on the retroactive changes in the law.

BACKGROUND

Defendant, who was born on October 11, 1995, was charged with carjacking (Pen. Code, § 215, subd. (a)[1] -- count 1), kidnapping to commit rape (§ 209, subd. (b)(1) -- count 2), rape by force or fear (§ 261, subd. (a)(2) -- counts 9 and 11), forcible oral copulation (former § 288a, subd. (c)(2)(A) -- counts 10 and 14), forcible rape in concert (§ 264.1, subd. (a) -- count 13), criminal threats (§ 422, subd. (a) -- count 17), and robbery (§ 211 -- count 18). It was further alleged that the crimes occurred during an aggravated kidnapping (§ 667.61, subd. (d)(2)).

At trial, the victim testified she was carjacked and kidnapped in Stockton at gunpoint on the night of June 2, 2017. It began with Deonte Turner pointing a gun at her and telling her to hand over her keys. Turner put her in the back seat and four other men eventually got in the car, including defendant. Over the course of several hours, four of the five men, while they drove from Stockton to Modesto and back, took turns raping the victim, putting their fingers in her vagina and anus, and forcing her to orally copulate them.

The victim identified defendant at trial as one of the men who forced her to orally copulate him. She also said the person she thought was defendant was wearing a wide-brimmed straw hat, "kind of like a gardening hat." She had also mentioned in an interview right after the kidnapping one of the attackers wore a straw hat. But later in her testimony at trial the victim stated she was unsure of her in-court identification of defendant and was unable to identify him in a photo lineup shortly after the events.

---

[1] Undesignated statutory references are to the Penal Code.

The victim also testified she was scared throughout the ordeal because she knew they had guns. She considered whether she would end up like her friend who went missing five years prior. The victim explained: "She was one of my best friends growing up because I used to dance with her a lot, and I was just thinking about her and thinking about is maybe this what she went through, is this what's happening to me is going to end up what happening [*sic*] to her. I was thinking about my family still and [my boyfriend] and how I'm still going to get home and things like that." Turner's counsel objected to this testimony on relevancy grounds. The prosecutor argued it was relevant to the victim's state of mind and the trial court overruled the objection on that basis, but after a second objection and a sidebar, the trial court told the prosecutor to "be very quick in this area."

The victim then said she was eventually released early the following morning after defendant threatened her and her family's life if she ever told anyone what happened.

Codefendant Isaiah Aragon testified that he, defendant, Turner, Otis Brown, and another man named Adam, carjacked the victim because defendant's car had broken down and they wanted to go to a party in Modesto.[2] Aragon testified to seeing some of the sexual assaults the victim described, admitted to himself having sex with the victim against her will, and said defendant suggested killing the victim instead of releasing her and that defendant threatened the victim's family before releasing her.

Aragon also testified that later the same day, he, a man named D-Rock, and defendant carjacked another person in a shopping center parking lot in Stockton. He said defendant had a gun, took the person's keys and handed them to Aragon. They then went and picked up Turner. Turner was arrested the following day, on June 4, 2017, driving the stolen car.

---

[2] Aragon pleaded guilty to rape by force or fear and to carjacking with an enhancement that he personally used a firearm.

Defendant's phone was found in the stolen car, and on the phone was a video of defendant, Aragon, and Turner in the stolen car wearing the same clothes from the night before when they kidnapped the victim. Location data from defendant's phone showed it was in the same vicinity as the victim's phone throughout the night and morning of the kidnapping. A picture on defendant's phone also showed him wearing a straw hat the day before the victim's kidnapping.

Prior to trial, the prosecutor moved in limine to introduce evidence of the second carjacking. The trial court eventually permitted the testimony but it is not clear on what grounds. The prosecutor said it would be used to show intent for carjacking and "circumstantial evidence that they were together." The prosecutor also said the carjacking was circumstantial evidence related to the allegation that the rape "was done in concert." The trial court said the evidence was admissible as strong circumstantial evidence that "they worked together," but not as evidence of intent or identification under Evidence Code section 1101, subdivision (b). In closing argument, the prosecutor discussed the picture of defendant and other evidence found on defendant's phone to establish defendant's identity as one of the victim's attackers but the second carjacking itself was not mentioned in the prosecutor's or defense counsel's closing argument and the trial court did not provide a limiting instruction to the jury prior to Aragon's testimony on the second carjacking.

Defendant testified at trial, denying he was involved in the crimes. But defendant did confirm he wore a straw hat in the June 1 picture and that he had not changed his clothes from June 1 to June 2, including wearing the straw hat.

The jury found defendant guilty on all charges and found all allegations true. On September 30, 2019, the trial court noted: "As indicated by the prosecutor, [defendant] was the mastermind of these crimes. [Defendant] started the higher sequence of events and pushed it to the ultimate conclusion, which is most unfortunate for everyone involved especially the victim in this case." The trial court sentenced defendant to nine years (the

4

upper term) for carjacking, eight months (one-third the midterm) for criminal threats, and one year (one-third the midterm) for robbery, resulting in a total determinate term of 10 years eight months.  The trial court also imposed seven years to life for kidnapping to commit rape and five consecutive indeterminate terms of 25 years to life for each rape by force or fear, forcible oral copulation, and forcible rape in concert.

## DISCUSSION

### I

Defendant first challenges the evidence of the uncharged second carjacking, arguing (1) the carjacking was irrelevant to prove defendant's association with Turner and Aragon, (2) it could not be admitted to prove a pattern of similar crimes, (3) because the discovery of his phone in the stolen car was irrelevant to prove the phone's contents, evidence of the carjacking was unnecessary, and (4) any slight probative value was outweighed by the unduly prejudicial nature of the carjacking evidence.

We need not consider the appropriateness of admitting the evidence of the subsequent carjacking because admission of this evidence was not prejudicial.  Contrary to defendant's assertion, the *Watson*[3] test for harmless error is applied to the state law error of admitting evidence of an uncharged act.  (*People v. Clark* (2021) 62 Cal.App.5th 939, 968; *People v. Winkler* (2020) 56 Cal.App.5th 1102, 1164.)  This test " 'focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration.  In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the

---

[3] *People v. Watson* (1956) 46 Cal.2d 818.

defendant complains affected the result.' " (*People v. Beltran* (2013) 56 Cal.4th 935, 956, original italics.)

The record indicates the evidence of the subsequent carjacking may have been relevant to prove defendant's identity, defendant's intent, and/or that defendant worked in concert with the other defendants. But there was plenty of other evidence establishing defendant's identity. The most reliable evidence was the location data on defendant's phone showing it was near the victim's phone throughout the night and morning of the attack. Defendant's phone also had a picture of him the day before the attack, June 1, wearing a straw hat. Defendant confirmed at trial he wore a straw hat on June 1 and on June 2, the day of the attack. Though the victim was ultimately unsure of her in-court identification of defendant, she said shortly after the incident and then reiterated in court that one of her attackers wore a straw hat, and that this attacker forced her to orally copulate him. Aragon also testified to defendant's participation in the kidnapping and assaults. Though Aragon was an accomplice, and his testimony must be considered with caution, it is still affirmative evidence of defendant's identity. And when considered with all the other identification evidence, it is very unlikely the second carjacking played any material role in the jury finding that defendant was one of the assailants.

There was also significant evidence of defendant's intent to carjack the victim. For this element, the prosecution had to prove beyond a reasonable doubt that defendant had "the intent to either permanently or temporarily deprive" the victim of possession of her car. (§ 215, subd. (a).) Aragon testified the group was looking to carjack someone because defendant's car broke down and they all wanted to go to Modesto. This evidence strongly indicates defendant intended to take possession of the car from the victim without her consent. Evidence of the second carjacking was not needed to establish defendant's intent.

Regarding the "in concert" element, there was significant evidence that the kidnapping and assaults involved multiple assailants working together. To counter this

6

evidence, defendant tried to establish he was not one of the assailants. But as we have discussed, there was plenty of identification evidence, rendering evidence of the second carjacking unnecessary. There was plenty of evidence that defendant worked in concert.

Defendant claims the evidence of a second carjacking encouraged the jurors to conclude that defendant was a bad character with a propensity to commit violent crimes and specifically armed carjackings. Such an improper use of the second carjacking evidence is very unlikely because the charged crimes were much more inflammatory than the uncharged carjacking. The uncharged carjacking involved a male victim, it did not involve a sexual assault, it was limited in time, and it appears defendant did not threaten the driver's family. (See *People v. Cordova* (2015) 62 Cal.4th 104, 133-134 ["because the uncharged crimes were not inflammatory compared to the charged crime, there was little prejudice"].) It is unlikely the jury felt compelled to convict defendant of the more significant charged offenses based on the commission of the less severe uncharged offense.

In addition, the prosecutor and defense counsel did not mention the second carjacking in their closing arguments. (See *People v. Clark* (2011) 52 Cal.4th 856, 924 [any error harmless where, among other things, the prosecutor did not discuss the challenged evidence during closing argument].) And defendant did not ask the trial court for a limiting instruction regarding the second carjacking evidence. (*People v. Cowan* (2010) 50 Cal.4th 401, 479 ["Absent a request, a trial court generally has no duty to instruct as to the limited purpose for which evidence has been admitted"].)

Given the overwhelming evidence of defendant's guilt, "it is not reasonably probable that, had the uncharged act evidence not been admitted, a result more favorable to defendant . . . would have been achieved." (*People v. Winkler, supra*, 56 Cal.App.5th at p. 1171.)

II

Defendant next challenges the victim's testimony regarding her thoughts during the attack concerning her missing friend. He contends this had no relevance and even if it did, it was outweighed by the potential for extreme undue prejudice. We again disagree.

"Except as otherwise provided by statute, all relevant evidence is admissible." (Evid. Code, § 351.) Under Evidence Code section 352, the evidence may be excluded if its "probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice."

The victim's state of mind was relevant to several charges against defendant. To be guilty of rape by force or fear, the prosecutor had to prove beyond a reasonable doubt that the rape was "accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury." (§ 261, subd. (a)(2); CALCRIM No. 1000.) The victim's state of mind is not only relevant to whether she was fearful, but also whether the rape was against her will. This was also the case for forcible oral copulation. (Former § 288a, subd. (c)(2)(A) ["accomplished against the victim's will by means of force, violence, duress, menace, or fear"].) And for the criminal threat charge, defendant had to make threats that caused the victim "reasonably to be in sustained fear for . . . her own safety." (§ 422, subd. (a); CALCRIM No. 1300.)

Defendant effectively concedes the evidence's relevance stating, "her state of mind was not relevant *except to show* that she never consented to any of the sex acts, to her forcible movement to various places in the SUV, or to the perpetrators' use of her SUV." (Italics added.) Nevertheless, defendant argues the evidence was cumulative of less prejudicial evidence that she was held and assaulted against her will. However, the testimony regarding her missing friend was not any more prejudicial than the other evidence establishing her fear, including that she was afraid when the men raped her, forced her to perform oral copulation, and digitally penetrated her for hours against her

8

will at gunpoint.  And the minimal prejudice that may have come from the testimony being somewhat cumulative was limited by the trial court's instruction to keep the questioning on the topic brief.

The trial court did not abuse its discretion in permitting admission of this testimony.

III

Defendant filed a supplemental brief addressing newly enacted Senate Bill No. 567 (2021-2022 Reg. Sess.).  He contends this bill requires remand for resentencing, and the People agree.

Effective January 1, 2022, when a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the trial court must impose a term not exceeding the middle term unless there are circumstances in aggravation of the crime that justify the imposition of a term exceeding the middle term and the facts underlying those aggravating circumstances (1) have been stipulated to by the defendant, (2) have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial, or (3) relate to the defendant's prior convictions and are based on a certified record of conviction.  (§ 1170, subd. (b)(1)-(3); Stats. 2021, ch. 731, Legis. Counsel's Digest.)  In addition, trial courts must impose the lower term, unless contrary to the interests of justice, if certain circumstances were a contributing factor in the commission of the offense.  (§ 1170, subd. (b)(6).)  One factor is if the defendant "was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense."  (§ 1170, subd. (b)(6)(B).)  A youth under section 1016.7 is "any person under 26 years of age on the date the offense was committed."  (§ 1016.7, subd. (b).)

These ameliorative changes to section 1170 apply retroactively to defendant's nonfinal conviction.  (*People v. Garcia* (2022) 76 Cal.App.5th 887, 902; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

The trial court sentenced defendant to the upper term of nine years for carjacking. The record does not establish that defendant stipulated to any factor in aggravation supporting the upper term sentence, that any aggravating factor was found true beyond a reasonable doubt by a jury or by the court in a court trial, or that any aggravating factor was based on a certified record of a prior conviction. Moreover, it appears defendant was under 26 years old when he committed the crimes and that the trial court did not consider his age during sentencing.

Although at least one court has applied a harmless error analysis to a challenge under Senate Bill No. 567 (*People v. Flores* (2022) 75 Cal.App.5th 495, 500-501), and the record in this case may ultimately support a finding of aggravating factors, because the trial court did not have the opportunity to consider the amendments to section 1170, we will remand the matter to permit the trial court to reconsider the sentence based on the retroactive changes in the law.

### DISPOSITION

The sentence is vacated, and the matter is remanded to the trial court for resentencing consistent with section 1170. In all other respects, the judgment is affirmed.

            /S/            
            MAURO, J.


We concur:


    /S/            
ROBIE, Acting P. J.


    /S/            
HOCH, J.

10